No. 117,343

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

ERIC CLARK,
*Appellant*,

v.

UNIFIED SCHOOL DISTRICT NO. 287,
*Appellee*.

SYLLABUS BY THE COURT

1.

Once access to a record is requested under the Kansas Open Records Act, the entity receiving the request has three business days to respond. If access is not granted within three days, the custodian must explain the cause for the delay and the place and earliest time the record will be available. If the request is denied, the custodian must provide—upon request—the specific statutory grounds for denial of access. This must be provided within three business days of the request for a statutory explanation. K.S.A. 45-218(d).

2.

There are some records that a public agency is not required to disclose. The statutory exceptions to mandatory disclosure are to be narrowly interpreted, and the burden of proving that the exception applies is on the public agency opposing disclosure. In general, the Kansas Open Records Act does not *prohibit* disclosure of records contained within these exceptions but makes their release discretionary with the agency's official records custodian.

1

3.

Correspondence between a public agency and a private individual is not subject to mandatory disclosure unless the correspondence is intended to give notice of an action, policy, or determination relating to any regulatory, supervisory, or enforcement responsibility of the public agency or which is widely distributed to the public by a public agency and is not specifically in response to communications from such a private individual. K.S.A. 2017 Supp. 45-221(a)(14).

4.

School boards have the statutory authority to control access to their facilities.

5.

A letter from a school board putting an adult on notice that he or she is banned from school district property is not exempt from disclosure under K.S.A. 2017 Supp. 45-221(a)(14).

6.

An individual is not entitled to recover damages against a public agency for violation of the Kansas Open Records Act.

7.

There is no substantive difference between the phrase "not in good faith" as used in K.S.A. 2017 Supp. 45-222(d) and (e) and the term "bad faith." Both mean dishonesty of belief, purpose, or motive.

8.

When costs are assessed against either a plaintiff or a defendant under K.S.A. 2017 Supp. 45-222, the court must make specific findings of fact regarding the reason for

the assessment and the facts upon which the court based its conclusion that the actions were not in good faith.

Appeal from Franklin District Court; ERIC W. GODDERZ, judge. Opinion filed March 9, 2018. Reversed and remanded with directions.

*Eric S. Clark*, appellant pro se.

*Lauren E. Laushman* and *J. Steven Pigg*, of Fisher, Patterson, Sayler & Smith, L.L.P., of Topeka, for appellee.

Before ARNOLD-BURGER, C.J., BUSER and SCHROEDER, JJ.

ARNOLD-BURGER, C.J.:  The Kansas Open Records Act (KORA) requires public agencies to respond to requests for public records within three business days. K.S.A. 45-218(d). A public agency can either provide the record, explain when the record will be available and the reason for delay, or deny the request. K.S.A. 45-218(d).

Eric Clark made a KORA request for a letter that Unified School District No. 287 (School District) sent to Gene Hirt informing Hirt that he was no longer allowed on school property. The School District denied the request, citing an exception to the KORA that allows it to refuse to disclose correspondence between a public agency and a private individual as long as the correspondence is not intended to give notice of an action, policy, or determination relating to any regulatory, supervisory, or enforcement responsibility of the public agency. The district court agreed that the letter was protected from disclosure under this exception. But school boards have a statutory duty to regulate their property. Because the letter provided notice to the patron of an action that the School District was taking pursuant to its regulatory authority to control access to its property, it was an open public record under the KORA. Accordingly, we find that the district court erred in shielding the letter from disclosure.

3

Clark also made a KORA request for policies related to the School District's power to take disciplinary action against nonstudent members of the public. The School District did not fulfill this request within three business days, and so the district court held that the School District violated the KORA. After finding a violation, the district court awarded costs and damages to Clark. Because we find that the KORA does not authorize damages, the damages award was in error. Furthermore, in order to award costs the district court was required to find that the School District acted in bad faith. Because there was no such finding by the district court and there was not substantial evidence presented to support a finding of bad faith, we find the district court erred in awarding costs to Clark as well.

FACTUAL AND PROCEDURAL HISTORY

The facts of this case are not in dispute. But first, a bit of background is in order.

Clark asserted in one of his pleadings in this case that on June 13, 2015, at the conclusion of a School District Board of Education meeting, Gene Hirt identified the superintendent as a "'dork.'" According to an article published in the Ottawa Herald on July 21, 2015, Hirt was subsequently sent a letter from the Board informing Hirt that "'after [his] rude and uncivil behavior following the June 13, 2015, USD 287 Board meeting, you will no longer be allowed on USD 287 property for any reason or under any circumstances.'" The newspaper went on to quote the letter, provided to it by Hirt, as stating, "'Your inability to express yourself in a civil and socially acceptable manner has brought about this action by the Board of Education of USD 287. Should you be found on USD 287 property at any time hereinafter the Franklin County Sheriff's Office will be notified and asked to remove you from school property.'"

According to his pleadings, Clark became concerned about what was meant by the School District's requirement that one behave in a "'socially acceptable manner.'" Clark

4

was "prone to identify the superintendent as a 'nincompoop' which arguably could tend toward being even more of a manner disruptive or disturbing to the normal educational functions of the school than would be an identification of 'dork.'" He asked for clarification at a subsequent Board of Education meeting and also made an open records request to determine the contents of the letter and the source and meaning of the policy.

After the newspaper article was published Clark filed a series of KORA requests with the School District. The particular requests that are at issue here deal with two specific information requests.

*The request for the Hirt letter*

On the same day as the article was published, Clark sent a KORA request to the School District requesting any disciplinary action concerning Gene Hirt, as well as any reference to Hirt in official memorandum of the School District. The School District responded the very next day that, after consultation with counsel, it could not provide Clark with the information without first obtaining permission from Hirt. Clark responded to the School District that its response did not comply with the law, apparently because the denial did not state the specific provision of law under which access was denied. See K.S.A. 45-218(d). The School District responded, stating that it was denying Clark's request on the basis of K.S.A. 2015 Supp. 45-221(a)(14) because the letter constituted "[c]orrespondence between a public entity and a private individual" and was exempt from the KORA. Clark responded, pointing out to the School District that there was an exception to K.S.A. 2015 Supp. 45-221(a)(14) which Clark believed applied and allowed disclosure. The School District stood by its prior denial.

5

*The request for the School District's policies*

On August 14, 2015, Clark filed another KORA request for public records which among other items requested copies

> "3) of the procedures, policies, guidelines, or any other types of directives or information in effect for authorizing any sanction, or punishment, or any other type of disciplinary action taken by the district after January 1, 2000 against any member(s) of the public who were not students of the district at the time of the action."

In response, the School District provided Clark with a PowerPoint presentation given to it by its legal counsel. The PowerPoint presentation was titled "Banning Parents and Patrons Who Bully Teachers and Administrators:  Can We Really Do That?" The PowerPoint explains that the school has control and responsibility over its property. The PowerPoint also discusses the state statutes that gave the school board authority to control its property. The statutes were attached to the PowerPoint. Clark responded to the School District that he did not think that the records were responsive to his request, primarily because no School District policies or procedures were included in the response.

Clark filed another KORA request for "*all* of the rules and regulations which have been adopted by the board of education and were in effect on June 13, 2015" in an attempt to look for himself for any rules that dealt with the School District's ability to exclude nonstudent members of the public from school premises. (Emphasis added.) The School District timely fulfilled the request, by sending Clark a 337-page U.S.D. 287 Board Policy Book.

*The complaint*

Clark subsequently filed a complaint in Franklin County District Court alleging that the School District violated the KORA. He argued that the School District violated the law by failing to provide the Hirt letter and by failing to satisfy his August 14 KORA request. He asked the court to find that the School District acted arbitrarily and capriciously, direct the School District to provide all requested information, and order the School District to pay his court costs and fees.

During the course of the litigation, the School District filed a motion for the court to conduct an in camera review of the Hirt letter. The court granted the School District's motion and reviewed the letter. The court held that the letter constituted an exempt record under K.S.A. 2015 Supp. 45-221(a)(14) as it was a correspondence between a public entity and private individual. Accordingly, the court found that the School District was not in violation of the KORA for failing to provide the letter.

The only remaining issue was whether the School District had complied with Clark's August 14 request for the School District's policies regarding disciplinary action taken against nonstudents. The court addressed this in a bench trial on February 7, 2017. Clark acknowledged that the School District's Board Policy Book satisfied his August 14 request, but questioned the delay in responding. The School District argued that Clark's August 14 request was confusing and that it thought that the PowerPoint and attached statutes had satisfied his request.

The court held that the policy book "should have been provided to [Clark] within 3 days of [Clark]'s August 14, 2015 request." The court stated that "while there appears to be no reasonable basis for [Clark]'s open records request or for filing this lawsuit," the School District committed a "technical violation of the Open Records Act" by failing to

7

provide the documents within three days. The court then awarded Clark $1 in damages and $405 in costs, which is what he requested at the hearing.

Clark appealed, and the School District cross-appealed.

ANALYSIS

*This appeal is not moot.*

A case is moot when the controversy between the parties has ended and any judgment of the court would be ineffective. *State ex rel. Slusher v. City of Leavenworth*, 285 Kan. 438, 454, 172 P.3d 1154 (2007). As a general rule, Kansas appellate courts do not decide moot questions or render advisory opinions. *Skillett v. Sierra*, 30 Kan. App. 2d 1041, 1046, 53 P.3d 1234 (2002). Because the mootness doctrine is a court-made doctrine and is not jurisdictionally based, it is amenable to exceptions. *State v. Montgomery*, 295 Kan. 837, Syl. ¶ 2, 286 P.3d 866 (2012). One commonly applied exception is the circumstance where a moot issue is capable of repetition and raises concerns of public importance. In that context, public importance means "'something more than that the individual members of the public are interested in the decision of the appeal from motives of curiosity or because it may bear upon their individual rights or serve as a guide for their future conduct as individuals.'" 295 Kan. at 841.

The School District argues that this case is moot because Clark received the Hirt letter, although not from the School District. It asserts that not only was Clark aware of the substance of the letter through the Ottawa Herald article before he even filed this action, but that Clark and Hirt sued the School District in federal court on May 16, 2017, and attached the letter to their complaint. See *Hirt v. Unified School District No. 287*, No. 17-CV-02279-JAR-GLR, 2017 WL 4776956, at *1 (D. Kan. 2017). The letter is printed in the federal opinion. Because Clark's sole issue on appeal seeks the production of the

8

Hirt letter and he has received the letter, the School District asserts it is moot. But that is not all Clark seeks. Clark also seeks a finding that the School District violated the KORA in denying his request and that it should be assessed costs and damages. Moreover, the statutory interpretation of an exception to the KORA is clearly a matter of public importance and an issue capable of repetition. Clark's claims regarding the Hirt letter are not moot.

*The district court erred in not releasing the Hirt letter under the KORA.*

*The KORA in general and our standard of review*

The KORA provides that "[i]t is declared to be the public policy of the state that public records shall be open for inspection by any person unless otherwise provided by this act, and this act shall be liberally construed and applied to promote such policy." K.S.A. 45-216. In general, all public records must be open for inspection by any person. K.S.A. 45-218(a). Also, with some limitations—primarily related to advance payment, as well as time, place, and manner of access—copies of open records may be obtained from the entity having custodial control of the record. K.S.A. 2017 Supp. 45-219; K.S.A. 2017 Supp. 45-220. Once requested, the entity receiving the request has three business days to respond. If access is not granted, the custodian must explain the cause for the delay and the place and earliest time the record will be available. If the request is denied, the custodian must provide—upon request—the specific statutory grounds for denial of access. This must be provided within three business days of the request for a statutory explanation. K.S.A. 45-218(d).

There are some records that a public agency is not required to disclose. K.S.A. 2017 Supp. 45-221. The statutory exceptions to mandatory disclosure are to be narrowly interpreted, and the burden of proving the exception applies is on the public agency opposing disclosure. *Data Tree v. Meek*, 279 Kan. 445, 454-55, 109 P.3d 1226 (2005).

9

From the exclusions we must conclude that with respect to certain records, the Legislature has determined that the public's right to know is subservient to statutory rights of personal privacy and the need for governmental confidentiality. But it is important to note that the KORA itself does not *prohibit* disclosure of records contained within these exceptions but makes their release discretionary with the agency's official records custodian. 279 Kan. at 455.

Here, we are called upon to interpret an exception to the general rule of open records. Clark asks us to determine whether the School District properly relied on K.S.A. 2015 Supp. 45-221(a)(14) to refuse to provide him a copy a letter between the School District and Hirt, banning Hirt from the School District's property. So we must interpret the meaning of the statute and whether it applies to allow nondisclosure of the letter.

Interpretation of a statute is a question of law over which appellate courts have unlimited review. *Neighbor v. Westar Energy, Inc.*, 301 Kan. 916, 918, 349 P.3d 469 (2015). In interpreting a statute, "[t]he most fundamental rule is that the intent of the legislature governs if that intent can be ascertained." *State v. Urban*, 291 Kan. 214, 216, 239 P.3d 837 (2010). "Only if the language is ambiguous—meaning capable of more than one reasonable interpretation—does an appellate court look behind the plain language to the legislative history or resort to canons of construction." *State v. Cleverley*, 53 Kan. App. 2d 491, 498, 390 P.3d 75 (2017).

*Analysis*

K.S.A. 2017 Supp. 45-221(a)(14) provides an exception to the general rule that public records are open to inspection. The exception protects from disclosure:

"Correspondence between a public agency and a private individual, other than correspondence which is intended to give notice of an action, policy or determination

10

relating to any regulatory, supervisory or enforcement responsibility of the public agency or which is widely distributed to the public by a public agency and is not specifically in response to communications from such a private individual." K.S.A. 2017 Supp. 45-221(a)(14).

The parties do not dispute that Clark seeks correspondence between a public agency and a private individual. The School District believes this section, the only one upon which it relies to claiming a right to nondisclosure, applies to the Hirt letter and Clark disagrees. The heart of the issue is determining whether the Hirt letter and similar correspondence is "intended to give notice of an action, policy or determination relating to any regulatory, supervisory or enforcement responsibility of the public agency." K.S.A. 2017 Supp. 45-221(a)(14). In other words, the parties dispute whether this "exception to the exception" applies.

The School District argues that it "is not a public agency with 'regulatory, supervisory or enforcement responsibility' as intended by the statute." This is because "[i]t is not charged with regulating or supervising other organizations or enforcing laws or regulations applicable to other organizations or persons." Clark counters that the School District has a policy regarding public conduct on school property. He then argues that "the creation of a policy is *de facto* exercise of a regulatory responsibility."

There are several state statutes relevant to a school's power to control its property. See K.S.A. 2017 Supp. 72-1416 ("[S]chool board shall have control of the school-district property . . . . [It] may open the schoolhouse for public purpose, under such rules and regulations as the board shall adopt."); K.S.A. 2017 Supp. 72-3216(b) ("The board of education shall adopt all necessary rules and regulations for the government and conduct of its schools, consistent with the laws of the state." ); K.S.A. 2017 Supp. 72-3216(d) ("[B]oard may open any or all school buildings for community purposes and may adopt rules and regulations governing use of school buildings for those purposes."); K.S.A.

11

2017 Supp. 72-1138(e)(1) ([B]oard "may transact all school district business and adopt policies that the board deems appropriate to perform its constitutional duty to maintain, develop and operate local public schools."). These statutes show that school districts have the responsibility to regulate school property and enforce those regulations. As Clark argues, the fact that the School District has a Board Policy Book is evidence of the exercise of this regulatory authority.

In the Hirt letter, the School District was informing Hirt of an action—that it was banning Hirt from school property. The power to ban Hirt from its property flowed from the legislative mandate that school boards shall have control over their property. The School District may not be regulating a profession or industry, but it is charged with regulating its property to ensure that the school can focus on its mission of educating children. Therefore, the School District should not have been able to avail itself of the exception in K.S.A. 2017 Supp. 45-221(a)(14). While the letter constituted "[c]orrespondence between a public agency and a private individual" it falls under the exception to the exception because it was "intended to give notice of an action . . . relating to any regulatory, supervisory or enforcement responsibility of" the School District. K.S.A. 2017 Supp. 45-221(a)(14). Therefore, the district court's decision protecting the Hirt letter was error. We pause to note that the issue presented here involves a letter to an adult about an adult. We make no finding one way or the other regarding whether the same rule would apply to a letter to a parent or student banning a student from school district property.

*The district court erred in assessing damages for the School District's failure to timely respond to Clark's August 14 request for the School District's policies and procedures.*

The district court found that the School District committed a "minute violation" of the KORA by failing to respond in a timely manner to Clark's August 14th request for the School District's policies and procedures. "[F]or that one technical reason the Court

12

would find that there has been a non-compliance with the open records act by [the School District]." The requested information was not ultimately provided to him until September 11, 2015, three days before this action was filed. That finding is not challenged on appeal. But the School District does appeal the district court's award of civil damages in the amount of $1.

The KORA provides that an individual may bring an action to "enforce the purposes of this act." K.S.A. 2017 Supp. 45-222(a). The purpose of the act, as stated in the KORA, is "that public records shall be open for inspection by any person unless otherwise provided . . . and this act shall be liberally construed and applied to promote such policy." K.S.A. 45-216(a). An individual may bring an action "by injunction, mandamus, declaratory judgment or other appropriate order." K.S.A. 2017 Supp. 45-222(a). The civil remedies available to a successful plaintiff include the assessment of costs and reasonable attorney fees against the public agency *if* the court finds that the public agency's denial of the requested record was "not in good faith and without a reasonable basis in fact or law." K.S.A. 2017 Supp. 45-222(d). The statute does not explicitly mention damages as a remedy. In addition, only a district attorney or the attorney general can seek civil penalties for a violation of the KORA. K.S.A. 2017 Supp. 45-223.

When the right to maintain an action is given by statute, as it is here, damages can only be recovered to the extent to which the statute allows it. See *Smith v. Printup*, 254 Kan. 315, 333-34, 866 P.2d 985 (1993) (citing *Railway Co. v. Townsend*, 71 Kan. 524, 81 P. 205 [1905]—both dealing with the availability of punitive damages). The parties dispute whether the phrase "other appropriate order" language in K.S.A. 2017 Supp. 45-222(a) gives a district court statutory authority to award damages. Like the prior issue, this is a matter of statutory interpretation over which we have unlimited review. *Neighbor*, 301 Kan. at 918.

13

Although this provision of the KORA has not yet been examined by Kansas courts, the Kansas Supreme Court has interpreted nearly identical language in a Kansas Open Meetings Act (KOMA) case. So we will look to that case for guidance.

In *Stoldt v. City of Toronto*, 234 Kan. 957, 678 P.2d 153 (1984), the Kansas Supreme Court had an opportunity to discuss the remedies available under the KOMA after Fred Stoldt brought an action alleging violation of the KOMA against the City of Toronto and some members of its city council. Similar to the KORA, the KOMA provides that upon the "application of any person," the district court has the power to enforce the purposes of the KOMA "by injunction, mandamus, declaratory judgment or *other appropriate order*." (Emphasis added.) K.S.A. 2017 Supp. 75-4320a(a). The Kansas Supreme Court noted that Stoldt sought "voidance of the city council's action, reinstatement, and monetary damages." 234 Kan. at 963. Stoldt did "not seek an injunction or a writ of mandamus." 234 Kan. at 963. The court concluded that while Stoldt had standing to raise the issue of violation of the KOMA, none of the remedies he sought were available to a private individual. 234 Kan. at 963. Like the KORA, the KOMA provides "civil penalties up to $500 and voidance of binding actions taken during a meeting in violation of the act." 234 Kan. at 962 (citing K.S.A. 75-4320[a]). But, these remedies are only available to the attorney general and county and district attorneys. 234 Kan. at 962-63 (citing K.S.A. 75-4320[a]). Moreover, the Kansas Supreme Court expressly agreed with the district court's order that an individual plaintiff does not have a cause of action for damages against a public agency under K.S.A. 75-4320a(a). 234 Kan. at 962.

Accordingly, *Stoldt* informs us that the phrase "other appropriate order" in K.S.A. 75-4320a(a) of the KOMA does not authorize a remedy of damages. 234 Kan. at 962. Because the KORA uses the same language, we find that Clark is not be able to recover damages under the "other appropriate order" provision of the statute. The KORA does not authorize an individual to recover damages from a public agency for a violation. Because

14

the KORA does not authorize damages, the district court erred in ordering the School District to pay $1 to Clark.

*The district court also erred in assessing costs against the School District.*

Finally, the School District argues that the district court erred in awarding costs to Clark. In order to award costs under the KORA, the district court must find that the School District acted both "not in good faith" and "without a reasonable basis in fact or law." K.S.A. 2017 Supp. 45-222(d). The School District argues that the district court did not make the requisite finding that it did not act in good faith because it merely found that the School District committed a technical or minute violation.

This issue presents us with a mixed question of law and fact. In such a situation, we apply a bifurcated review standard. The court's factual findings are generally reviewed under the substantial competent evidence standard. Its conclusions of law based on those facts are subject to unlimited review. See *Gannon v. State*, 298 Kan. 1107, 1175-76, 319 P.3d 1196 (2014). "'Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion.' In determining whether substantial competent evidence supports the district court findings, appellate courts disregard any conflicting evidence or other inferences that might be drawn from the evidence. [Citations omitted.]" 298 Kan. at 1175-76.

Before ruling on the issue of costs, the district court reviewed the facts. The judge indicated that there had been a "minute violation" of the KORA in that the School District's Board Policy Book should have been sent in response to the August 14 request. As noted earlier, the KORA requires agencies to act upon a public record request within three business days of receiving the request. K.S.A. 45-218(d).

15

The district court then discussed costs. It correctly noted that it could only award costs if it found that the School District's "denial of access to public record was not in good faith and without a reasonable basis in fact or law." The entirety of the court's analysis on this issue was a statement by the judge that "as I've already indicated I don't see that there was any reason why the records shouldn't have been provided in response to that August 14 letter." The court then assessed costs against the School District. The court did not make specific factual findings that the School District did not act in good faith, or that the School District acted without a reasonable basis in fact or law. We find that when costs are assessed against either a plaintiff or a defendant under K.S.A. 2017 Supp. 45-222, the court must make specific findings of fact regarding the reason for the assessment and the facts upon which the court based its conclusion that the actions were not in good faith. This will allow for meaningful appellate review. But even considering the lack of such specific findings in this case, we will examine the facts as presented to the district court.

While there is substantial competent evidence to support a finding that the School District did not have a reasonable basis in fact or law for failing to timely send the policy, that does not lead to a conclusion that it was acting in bad faith. In fact, the evidence suggests that the School District attempted to respond appropriately to Clark's August 14 request, albeit in a misguided manner, by sending copies that cited the legal authority the School District had to control its premises. We fail to see a substantive difference between the phrase "not in good faith" as used in the statute and the term "bad faith." "Bad faith" means "[d]ishonesty of belief, purpose, or motive." Black's Law Dictionary 166 (10th ed. 2014).

An example of bad-faith behavior regarding compliance with the KORA was provided by our Supreme Court in *Telegram Publishing Co. v. Kansas Dept. of Transportation*, 275 Kan. 779, 69 P.3d 578 (2003). There, a reporter for The Garden City Telegram (Telegram) contacted the Kansas Department of Transportation (KDOT)

16

seeking records of hazard ratings for railroad crossings in Finney County. KDOT advised her that the records were protected under federal law, specifically 23 U.S.C. § 409 (2000). The reporter filed a formal KORA request. A KDOT legal assistant contacted the reporter and discussed her request and the application of § 409. The assistant promised to send a copy of § 409 but did not. After 30 days, when she still had not received a written response, the reporter sent KDOT another letter informing it of its KORA obligations to provide the requested hazard rating records. A KDOT attorney sent the reporter a formal response informing her that KDOT would not disclose the records citing the applicable federal law. About two months later, Telegram's legal counsel sent another KORA request to KDOT for the same information. The letter noted that the federal law relied on by KDOT only provided that records could not be admitted in federal or state proceedings, not that the records were privileged from disclosure via a KORA request. KDOT did not issue a written response to Telegram. KDOT's legal assistant scheduled a conference call for the parties, but it was cancelled. The legal assistant informed Telegram that no action would be taken on its request until at least October 22, well over two months after the initial request. On October 16, Telegram filed an action in district court seeking disclosure of the information and alleging that KDOT had violated the KORA.

The district court held that KDOT violated the KORA. It awarded attorney fees and costs to Telegram, holding that KDOT's denial of access to the records was not in good faith and that KDOT's position was without a reasonable basis in fact or law. The Kansas Supreme Court affirmed, holding "that KDOT's inadequate oral response—which it admits was after July 8—to the July 3 KORA request, its admitted tardy written response on August 12 to the August 3 KORA request, and its hollow oral response to legal counsel's October 6 KORA request, all violated [the KORA]." 275 Kan. at 792. The court also took note of an affidavit of KDOT's acting secretary which stated "that the agency was more concerned that public access to the information would be disruptive, bring outside pressure, and inhibit the free exchange of information and ideas in traffic

analysis and project prioritization than it was about meeting the letter and spirit of KORA." 275 Kan. at 793. The court concluded that "[t]his conduct and attitude together establish[ed] bad faith." 275 Kan. at 793.

The School District's conduct and attitude here is much different than that of KDOT in *Telegram Publishing*. Clark sent a litany of requests to the School District—between April and December of 2015, Clark sent 11 KORA requests and numerous follow-up letters seeking a variety of information. Unlike KDOT, which was dilatory in addressing Telegram's request, the School District was proactive in addressing Clark's numerous requests. The School District's superintendent testified that he was not trying to keep the school board policy from Clark for any strategic reason, he just did not understand what Clark was asking for in his request. Overall, the School District's pattern of conduct was that of an agency making a good-faith effort to satisfy Clark's many KORA requests.

KOMA caselaw is also informative in determining what constitutes a good-faith action. In KOMA cases, the court "will look to the spirit of the law, and will overlook mere technical violations where the public body has made a good faith effort to comply and is in substantial compliance with the KOMA, and where no one is prejudiced or the public right to know has not been effectively denied." *Stevens v. Board of County. Comm'rs*, 10 Kan. App. 2d 523, 526, 710 P.2d 698 (1985).

In *Stevens*, during a regular meeting of the Board of County Commissioners of Reno County, the Board took a 40-minute recess. During the recess, the Commissioners and other persons remained in the meeting chambers. The persons remaining informally discussed several items of county business. Charles Stevens filed suit against the Commissioners, alleging that the discussions during the recess violated the KOMA. The Court of Appeals held that, assuming a violation of the KOMA occurred, it was only a technical violation as the Board acted in good faith. In support of its holding, the Court of

18

Appeals noted that the "record fail[ed] to demonstrate that any binding action was taken during the recess or that the recess was used as a subterfuge to defeat the purposes of the KOMA." 10 Kan. App. 2d at 526. Additionally, Stevens had a video recording of the chambers and he could not show that his rights had been prejudiced by the recess gathering.

Here, there is also no evidence that the School District's failure to send the Board Policy Book in response to Clark's August 14 request was used as a subterfuge. When Clark sent his August 28 request and the superintendent realized that Clark was seeking the actual policy books, the School District timely responded with the Board Policy Book. The fact that the School District did send Clark the school board policy less than a month after his request supports the idea that the School District was not trying to hide the policy from Clark. Additionally, as the court noted, the PowerPoint and statutes basically discussed the same thing as the Board Policy Book, "but it's not the actual policy itself." This is further evidence that the School District was not trying to conceal the information from Clark, or otherwise thwart his attempt to access it.

Likewise, in *Stevens v. City of Hutchinson*, 11 Kan. App. 2d 290, 726 P.2d 279 (1986), the City of Hutchinson improperly held a closed executive session in violation of the KOMA. The district court held that the City had only committed a technical violation. The Court of Appeals affirmed, holding that "the testimony of the City Commissioners and the manager that they acted in good faith amply supports the trial court's finding that any violation was merely technical." 11 Kan. App. 2d at 291. Here, similarly, the superintended testified that he acted "to the best of [his] ability" to satisfy Clark's August 14 KORA request.

The School District made a timely response to Clark's August 14 request. Before sending the response, the School District consulted with its attorney. While consultation with an attorney cannot shield the School District from being found in violation of the

19

KORA, it does suggest that the School District was making a good-faith effort to comply with the law. The superintendent's testimony, coupled with the fact that the School District sent Clark the Board Policy Book as soon as it realized what Clark was asking for, also suggest that the School District did not act in bad faith. The only evidence that supports a finding of bad faith is that the School District mistook the nature of Clark's request and quickly corrected its mistake. This does not constitute substantial competent evidence that the School District acted in bad faith. Therefore, it was error for the district court to assess costs against the School District.

In conclusion, the district court's decision allowing nondisclosure of the Hirt letter is reversed and the School District is ordered to release a copy of the Hirt letter to Clark. In addition, the district court's order assessing damages of $1 and costs against the School District is reversed.

Reversed and remanded with directions.